**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**TE PRODUCTS PIPELINE**
**COMPANY, LLC**                                                                                          **PLAINTIFF**

v.                                   **CASE NO. 4:08CV000204 BSM**

**DAVIDSON RANCH, INC.**                                                                            **DEFENDANT**

**ORDER**

This is a diversity case involving a right-of-way and the right of ingress and egress to a right-of-way that was tried to the court on March 16-17, 2009. After hearing the testimony, reviewing the documents moved into evidence, and hearing the vigorous arguments of counsel, the court ruled from the bench for the defendant. The parties, however, were allowed to submit post-trial briefs. Now, after reviewing the post-trial briefs, which thoroughly explained the law, and the parties' positions, the court again rules for the defendant.

I . BACKGROUND

TE Products Pipeline Company, LLC, (TEPPCO) is a Delaware Corporation that, along with its predecessors, have constructed, maintained, and operated high pressure interstate natural gas and petroleum products pipelines that run across property owned by Davidson Ranch, Inc. (Davidson). In 1943, TEPPCO's predecessor in interest received a right-of-way from Davidson's predecessor in interest across the property in question. The pipelines run under the right-of-way. Davidson purchased the property in 2004, subject to

TEPPCO's right of way.

Since 1943, TEPPCO and its predecessor have accessed their pipelines on the Davidson property by routes that TEPPCO and its predecessor deemed to be the least harmful and least damaging to the Davidson property. During that time, TEPPCO has usually gained access to its pipeline by Harris Road, a private road located on the Davidson property. When Davidson purchased the property from the Harris family in 2004, it immediately began placing gates along Harris Road. Harris Road is the only access point to the Ready Family Cemetery, which is located near the Davidson property. Although the primary purpose of the gates was to prevent the grazing cattle from straying, Davidson blocked public access to the Ready Family Cemetery and blocked TEPPCO from reaching its right-of-way via the easiest access point.

During a regular internal inspection of its P2 pipeline, an anomaly was detected that required TEPPCO to conduct a physical inspection of the pipeline. When TEPPCO notified Davidson that it needed access to its pipelines by the nearest and least intrusive route, as determined by TEPPCO, Davidson denied the request. Thereafter, TEPPCO filed this lawsuit.

At trial, the key issues were whether TEPPCO has an unfettered right to access its right-of-way on the Davidson's property at the most convenient point for TEPPCO; or whether Davidson can require TEPPCO to access its right-of-way at the points where the right-of-way enters onto, or exits from, the Davidson property. Secondary issues were

whether TEPPCO has acquired a prescriptive easement on the Davidson property by Harris Road and whether TEPPCO, as a common carrier, has the power to condemn Davidson's property and take an interest in it by imminent domain. The final issue is whether TEPPCO has the right to access its right-of-way by Harris Road, a private road, owned by Davidson.

## II.  TEPPCO'S UNFETTERED ACCESS TO DAVIDSON'S PROPERTY

TEPPCO does not have the right to access its right-of-way from any point that it deems appropriate. This is true because the right-of-way documents do not grant this right and TEPPCO has presented no precedent granting it such a right. Further, TEPPCO has access to its pipelines along the right-of-way.

TEPPCO argues that it has an unfettered right to enter upon the Davidson property to access its right-of-way. It asserts that it is not required to enter Davidson's property at the points where the right-of-way crosses onto and off of the Davidson property, but that it has the right to enter the property at the location that is most convenient for TEPPCO.

The evidence showed that TEPPCO's right-of-way crosses the Davidson property diagonally. It enters the property from the southwest corner at Interstate 40, and exits the property at its northeast corner. *See* Defendants Exhibit 17. The testimony showed that it would have been extremely difficult for TEPPCO to get to the anomaly by traveling along its right-of-way from I-40, because it would have had to cross Ink Bayou, a body of water resting in the southern portion of the Davidson property. The testimony also showed that it would have been inconvenient for TEPPCO to get to the anomaly by traveling along its right-

of-way from the northeast corner of the Davidson property because that was not the most direct route to the anomaly. Indeed, TEPPCO's witnesses testified that the most direct route to the anomaly was by traveling northwest by Harris Road and then traveling north, across a field located on the Davidson property.

The right-of-way documents do not grant TEPPCO the right to enter upon the Davidson property at any point that TEPPCO deems appropriate, and TEPPCO has provided no precedent for this proposition. Further, the evidence showed that TEPPCO could access the anomaly on its pipeline by traveling onto the Davidson property along the right-of-way. Although traveling along the right-of-way would have been more difficult than traveling along Harris Road, nothing requires Davidson to open up its property to allow TEPPCO access to the right-of-way by the easiest means.

## III.  PRESCRIPTIVE EASEMENT

TEPPCO does not have a prescriptive easement to the Davidson property. One asserting an easement by prescription must show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Myers v. Yingling*, __ Ark. __, __ S.W.3d __ (March 6, 2008); *Bobo v. Jones*, 364 Ark. 564, *569, 222 S.W.3d 197, **201 (2006). The statutory period of seven years for adverse possession applies to prescriptive easements. *Myers*, __ Ark. at __, __ S.W.3d at __. Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim is being exerted. *Bobo*, 364 Ark. at *569, 222 S.W.3d

at **201; *Wilson v. Schuman*, 90 Ark. App. 201, *204, 205 S.W.3d 164, **167 (2005). Permissive use of an easement cannot ripen into an adverse claim without clear action placing the owner on notice. *Bobo*, 364 Ark. at *569, 222 S.W.3d at **201; *Wilson*, 90 Ark. App. at *204, 205 S.W.3d at **167.  For use by permission to ever ripen into title, the claimant must put the owner on notice that the way is being used under a claim of right. *Johnson v. Jones*, 64 Ark. App. 20, *25, 977 S.W.2d 903, **905 (1998).

The trial testimony showed that, at all times, past and present, TEPPCO's use of the Davidson property has been with the consent of the property owners.  Therefore, TEPPCO's use of the property has not been adverse and it fails to establish that it has a prescriptive easement across the Davidson property.

## IV.  CONDEMNATION

TEPPCO does not have the right to condemn the Davidson property for the purpose of accessing its right-of-way.

TEPPCO argues that, under Arkansas law, it has a right to condemn an easement for ingress and egress to its right-of-way.  An easement is defined to be a liberty, privilege, or advantage, which one man may have in the lands of another without profit.  *Sluyter v. Hale Fireworks P'ship*, 370 Ark. 511, *514, 262 S.W.3d 154, **156-57 (2007); *Millwood Sanitation & Park Co., Inc. v. Mattingly*, 100 Ark. App. 56, *58, 264 S.W.3d 566, **569 (2007).  An easement is a property right, and, as such, is entitled to the all the constitutional safeguards afforded to other property rights. *Sluyter*, 370 Ark. at *514, 262 S.W.3d at **157.

Article 2, section 22 of the Arkansas Constitution provides that "the right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor." *Pfeifer v. City of Little Rock*, 346 Ark. 449, *458, 57 S.W.3d 714, **720 (2001). Despite the value placed on the ownership of property, the government and certain corporations are permitted, under the power of eminent domain, to take private property for a public use without the owner's consent, conditioned on the payment of just compensation. *First Baptist Church of Rosebud v. Town of Rosebud*, No. CA 03-629, 2004 WL 304202 (Ark. App. Feb. 18, 2004) (order).

Broad discretion is vested in those whom the power of eminent domain is delegated. *Harness v. Ark. Pub. Serv. Comm'n*, 60 Ark. App. 265, *275, 962 S.W.2d 374, **378 (1998); *see State Highway Comm'n v. Saline County*, 205 Ark. 860, 171 S.W.2d 60, *61 (1943). The question of whether the condemnation of the property is necessary is left largely to the discretion of the condemnor, and the exercise of that discretion will not be disturbed unless it clearly appears that the discretion has been abused and the action is arbitrary and causing unnecessary damage to the property owner. *Harness*, 60 Ark. App. at *275, 962 S.W.2d at **378; *see Patterson Orchard Co. v. Southwest Ark. Utilities Corp.*, 179 Ark. 1029, 18 S.W.2d 1028 (1929). In determining whether the taking of property is necessary for public use, not only the present demands of the public, but those which may fairly be anticipated in the future, may be considered. *Pfeifer,* 346 Ark. at *460, 57 S.W.3d at **721.

TEPPCO's right of condemnation does not confer upon it the right to condemn the

Davidson property for the purpose of accessing its right-of-way. Under Arkansas law, TEPPCO is a common-carrier and has a right of eminent domain. Ark. Code Ann. § 23-15-101 (Repl. 2002). Moreover, Arkansas Code Annotated section 18-15-1301(a) (Repl. 2003) allows any corporation, for the purposes of transporting natural gas by pipeline form the point of production to any other point, to construct, operate, and maintain a pipeline for that purpose along and under the public highways and streets of cities and towns with the consent of the proper authority. That statute, however, provides, in relevant part, that "[w]henever a corporation desires to construct a pipeline . . . or right-of-way of any railroad . . . the corporation, by its agents, shall have the right to enter peacefully upon the lands or right-of-way and survey, locate, and lay out its pipeline, thereon[.]" Ark. Code Ann. § 18-15-1301(a)(1). That statute, when read literally, permits a common carrier to condemn property so that it can survey and lay out its pipeline. It does not permit a common-carrier to condemn private property so that it can access a right-of-way that it already has.

This finding is supported by *Loyd v. Southwest Arkansas Utilities Corp.*, 264 Ark. 818, 580 S.W.2d 935 (1979). In *Loyd*, a utility company condemned a one hundred foot strip of property to construct an electric transmission line. In addition to taking the one hundred foot right-of-way, the utility company also attempted to take an undefined right of ingress and egress over all of the property for the purposes of "doing anything necessary or useful to the enjoyment of the easement herein granted." *Id.* at 821. The landowners objected, arguing that the taking of the right of ingress and egress amounted to the taking of an

easement and that the utility company should therefore pay the full market value for all of the property. *Id.* at 821-22. The utility company argued that the right of ingress and egress was merely a "secondary easement"[1] and that payment as though the property was taken in fee was unreasonable. *Id.* at 823. The trial court ruled for the utility company and the landowner appealed.

The Arkansas supreme court reversed, finding that:

> [A] secondary easement does not necessarily exist in every case. For example, a highway department or railroad company would not have a right of ingress or egress over all adjacent land to its rights-of-way. It is not needed because access is inherent in such easements or rights-of-way. Nor would one exist where access to a right-of-way, such as that taken in this case, already exists.

*Id.* at *824, 580 S.W.2d at **938. The court went on to state that it never had an occasion to recognize a secondary easement and that there was no need to do so in the *Loyd* case, because what the utility company sought and acquired was not a secondary easement but a separate and distinct right of ingress and egress over all of the property owners' property. *Id.* at *825, 580 S.W.2d at **938. Most importantly, the court held that the Arkansas condemnation statutes do not include a right to an undefined right of ingress or egress. *Id.*

---

[1] A secondary easement has been defined as:
> The right to enter upon the servient tenement for the purpose of repairing or renewing an artificial structure, constituting an easement, is called a secondary easement, a mere incident of the easement that passes by express or implied grant, or is acquired by prescription. . . . This secondary easement can be exercised only when necessary, and in such a reasonable manner as not to needlessly increase the burden upon the servient tenement.

*Loyd*, 264 Ark. at *824, 580 S.W.2d at **937 (quoting *Virginia Electric & Power Co. v. Webb*, 196 Va. 555, 84 S.E.2d 735 (1954)).

at *826, 580 S.W.2d at **938.

## V.  Harris Road

Harris Road is hereby deemed a public road from Galloway Road to the Ready Family Cemetery.  Based upon the trial testimony and Arkansas Code Annotated section 14-14-812, the court finds that Harris Road is a public road up to the cemetery.  Harris Road, from the cemetery to TEPPCO's right-of-way, is a private road.

Davidson argues that Harris Road is a public road to Ink Bayou and thereafter it is a private road.  The evidence at trial establish that the Ready Family Cemetery sits on Harris Road beyond Ink Bayou.  Arkansas Code Annotated section 14-14-812 (Repl. 1998) provides:

> (a) A "cemetery", as used in this section, means any burying place for the dead, a burial plot, a graveyard, or any land, public or private, dedicated and used for the interment of human remains which includes at least six (6) grave markers.
>
> (b)(1) The county judges of the several county governments in Arkansas shall be authorized to improve and maintain any roads across public or private lands used or to be used for access to a cemetery.
>
> (2) The cemetery access roads shall be constructed to a standard and nature to permit their use by automobiles.

For the reasons set forth above, Davidson shall not  restrict access over the portion of Harris Road that is deemed public.

## VI.  DAMAGES

Because TEPPCO did not have a right to access its right-of-way via Harris Road, it

9

has suffered no damages. Further, the evidence established that TEPPCO effectively mitigated its damages in that its contractor reassigned his workers during the period of time that TEPPCO was denied access to the Davidson property via Harris Road

## VII. CONCLUSIONS

TEPPCO failed to meet its burden on all of its claims against Davidson and, therefore, its claims are dismissed with prejudice. Davidson's counterclaims are also dismissed with prejudice because Davidson failed to meet its burden of proof.

IT IS SO ORDERED this 1st day of June, 2009.

*/s/ Brian S. Miller*
UNITED STATES DISTRICT JUDGE